# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Pio German Espinal,
    Petitioner,

vs.                                            Case No. 1:05cv812
                                                  (Dlott, J.; Hogan, M.J.)

Jeffrey Wolfe,
    Respondent.

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Noble Correctional Institution in Caldwell, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's "Answer/Return Of Writ," and petitioner's "traverse" in reply to the return of writ. (*See* Docs. 1, 7, 10).

### Procedural Background

On March 14, 2003, the Hamilton County, Ohio grand jury issued an indictment charging petitioner and two co-defendants with one count of possession of cocaine in violation of Ohio Rev. Code § 2925.11(A), one count of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A)(2), and one count of conspiracy in violation of Ohio Rev. Code § 2923.01(A)(2). (Doc. 7, Ex. 1). In

addition, a major drug offender specification was attached to the drug possession and trafficking charges.  (*Id.*).

On September 23, 2003, after the trial court denied a pretrial motion to suppress statements made by petitioner during police questioning and after petitioner executed a "waiver of trial by jury," petitioner entered a guilty plea to the drug trafficking charge in exchange for dismissal of the possession and conspiracy charges and all specifications. (*See id.,* Exs. 4-8).  On that same date, petitioner was sentenced in accordance with the plea agreement to a five (5) year prison term.  (*See id.,* Exs. 7, 9).

In the written plea agreement executed by petitioner, as well his trial counsel and the assistant prosecuting attorney, petitioner stated that he understood his "right to appeal a maximum sentence; my other limited appellate rights and that any appeal must be filed within 30 days of my sentence."  (*Id.,* Ex. 7).  At the plea-taking/sentencing hearing, where an interpreter was present to translate what was said to and by petitioner, petitioner stated that he had "read over" and discussed the terms of the written plea agreement with his counsel and translator and understood "the meaning of th[e] form."  (*Id.,* Ex. 23, Tr. 6).

Before accepting petitioner's plea, the trial court also specifically addressed the portion of the plea agreement pertaining to petitioner's appellate rights as follows:

> THE COURT: Any appeal must be filed within 30 days of your sentence.  Do you understand that?
>
> THE INTERPRETER: Yes.
>
> THE COURT: Do you have any questions?
>
> THE DEFENDANT: No.

(*Id.,* Tr. 12).  At the close of the hearing, the court further advised petitioner that he had "rights with regard to an appeal," which included the right to file an appeal and to court-appointed counsel free of cost; when asked whether petitioner understood this, the interpreter replied: "Yes." (*Id.,* Tr. 20).

Petitioner did not perfect a timely appeal. Instead, on December 18, 2003, he filed a *pro se* motion for leave to file a delayed appeal to the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 10). In support of this motion, petitioner averred that the trial court failed to appoint counsel to represent him on appeal and that his trial counsel provided ineffective assistance in part because he failed to consult with petitioner about his "options" or "the benefits of an Appeal." (*Id.,* "Affidavit In Support For Delayed Appeal").

On January 30, 2004, the Ohio Court of Appeals overruled petitioner's motion for leave to appeal on the ground that "appellant has failed to provide sufficient reasons for failure to perfect an appeal as of right." (*Id.,* Ex. 12).

Over ten months later, on December 10, 2004, petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the Supreme Court of Ohio. (*Id.,* Exs. 13-14). Petitioner asserted as "good cause" for his delay in filing that he was not informed of his appeal rights by the trial court, defense counsel or the court-appointed interpreter; that he is an immigrant from the Dominican Republic who speaks "only broken-[E]nglish;" and that he did not "knowingly or intelligently waive [his] right to appeal to this court." (*Id.,* Ex. 14, "Affidavit of Pio German Espinal").

On January 26, 2005, the Supreme Court of Ohio denied petitioner's motion for delayed appeal and dismissed the case without opinion. (*Id.,* Ex. 15).

It appears from the record that petitioner also filed a petition for post-conviction relief with the Hamilton County Common Pleas Court in December 2004.[1] Petitioner states in his "traverse" brief that he mailed the petition on December 8, 2004 together with a "warrant to convey him from the institution at which he is incarcerated." (Doc. 10, pp. 3-4). Petitioner points out that the trial court's "Appearance Docket" reflects that his motion for issuance of a conveyance warrant was filed on December 17, 2004, although no reference was made to his post-conviction petition. (*Id.,* p. 4 & Ex. B). Both parties agree that the post-

---

[1]The trial court's entry denying post-conviction relief erroneously refers to a "November 16, 2004 post-conviction petition" filed by petitioner. Both parties agree that petitioner filed only one post-conviction petition in December, not November, 2004, and that the trial court's entry, therefore, constituted a ruling on the petition filed in December 2004. (*See* Doc. 7, Brief, p. 4; Doc. 10, pp. 3-4).

3

conviction petition was stamped as "filed" on December 20, 2004, and was overruled by the trial court on January 25, 2005. (Doc. 7, Brief, p. 4 & Exs. 17-18, 24; Doc. 10, p. 4 & Ex. B).

Petitioner states in his "traverse" brief that he was not served with a copy of the trial court's January 25, 2005 decision denying post-conviction relief and, because he was unaware of that decision, filed further pleadings in support of his post-conviction petition. (Doc. 10, p. 4; *see also* Doc. 7, Exs. 20-22, 24). The last such pleading was filed on April 20, 2005. (Doc. 7, Exs. 22, 24). Petitioner does not indicate when he discovered the trial court had overruled his post-conviction petition. However, it is clear from the record that petitioner never sought to appeal the trial court's decision in the state courts. (*See id.,* Ex. 24).

In December 2005, petitioner filed the instant petition for federal habeas corpus relief. (Doc. 1). Petitioner alleges numerous claims in three grounds for relief.

Specifically, in Ground One, petitioner contends his Sixth Amendment right to effective assistance of counsel was violated when he was denied the "right to consult with counsel from the Consulate;" he was "induced and coerced" to sign an "[E]nglish-printed" counsel waiver at the Hamilton County Jail on his initial arrest and police questioning; and his trial counsel (1) failed to object to "the more than minimum prison term upon this first time offender," and (2) neither consulted with petitioner about his appeal options nor filed a timely appeal on petitioner's behalf. (*Id.*, p. 5, attachment).

In Ground Two, petitioner alleges his due process rights were violated based on the failure of the trial court and defense counsel "to ensure the non-[E]nglish speaking criminal defendant was informed of his appeal rights by the court appointed interpreter;" the denial of his right "to consult with counsel [who] speaks his" language; the denial of counsel during his custodial interrogation; the Ohio Court of Appeals' and Supreme Court of Ohio's decisions denying his motions for delayed appeal; and the trial court's failure to rule on his post-conviction petition "within the 180 days mandated by Criminal Rule 35(C)." (*Id.*).

Finally, in Ground Three, petitioner asserts that his equal protection rights were violated because he was denied counsel at certain stages of the criminal process; he was denied effective assistance by his trial counsel; he was denied

4

counsel for appeal purposes, as well as "transcripts and needed documents to prosecute an appeal;" he was not sentenced to the mandatory minimum sentence for the underlying offense; the Ohio Court of Appeals and Supreme Court of Ohio denied him leave to file a delayed appeal; and the trial court failed to "rule upon the petition for post-conviction relief, within 180 days mandated by Criminal Rule 35(C)." (*Id.,* p. 6, attachment).

In the return of writ, respondent contends that the petition is time-barred.[2] (Doc. 7, Brief, pp. 7-12). Respondent alternatively argues that petitioner has waived most of his claims for relief and has failed to demonstrate that his guilty plea was involuntary, his trial counsel was ineffective, or he was deprived of his right of appeal. (*Id.,* pp. 12-21).

## OPINION

### A. Petitioner Is Not Entitled To Relief On His Claims Essentially Alleging That He Was Denied His Constitutional Right Of Appeal

In Ground One of the petition, petitioner alleges that his trial counsel was ineffective in part because he neither consulted with petitioner about his appeal options nor perfected a timely appeal on petitioner's behalf. In Grounds Two and Three, petitioner further contends that his Fourteenth Amendment rights to due process and equal protection were violated when (1) counsel was not appointed to represent him, and necessary documents were not provided to him, for the purpose of prosecuting an appeal, and (2) the Ohio Court of Appeals denied his motion for leave to file a delayed appeal. Essentially, petitioner claims that he is entitled to habeas relief because these alleged errors by his trial counsel, the trial court and the Ohio Court of Appeals deprived him of his constitutional right of appeal.

---

[2]Although respondent has persuasively argued that the petition is barred from review on statute of limitations grounds, the record has not been sufficiently developed as to when, if ever, petitioner received notice of the trial court's January 25, 2005 decision denying his petition for state post-conviction relief. Because the statute of limitations may be equitably tolled if petitioner can establish that (1) he has been pursuing his rights diligently, and (2) "some extraordinary circumstance stood in his way," *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005) (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)), the undersigned will assume, without deciding, that the statute of limitations does not bar review of the instant petition.

5

The Constitution does not require states to grant appeals as of right to criminal defendants seeking review of alleged trial errors. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *see also Halbert v. Michigan,* 545 U.S. 605, 610 (2005) (citing *McKane v. Durston,* 153 U.S. 684, 687 (1894)). However, once a state does provide the right to appeal following a criminal conviction, the appeal process must comport with the Fourteenth Amendment's guarantees of due process and equal protection. *Evitts,* 469 U.S. at 393, 403; *see also Douglas v. California*, 372 U.S. 353, 356-57 (1963); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956); *cf. Halbert,* 545 U.S. at 616-23 (2005) (holding that the Due Process and Equal Protection Clauses require the appointment of counsel for indigent defendants seeking first-tier review of guilty or *nolo contendere* pleas in the intermediate state court of appeals, whose function is to review and "correct errors made by the lower courts," even though such review is discretionary under state law).

The purpose of a first appeal provided as of right by a state is to determine whether the individual defendant has been lawfully incarcerated and to ensure a correct adjudication of guilt or innocence. *See Evitts*, 469 U.S. at 402; *Griffin*, 351 U.S. at 18-19. By deciding that an appeal is so important that it must be available as a matter of right, the state itself recognizes that the appeal plays such a crucial role that it cannot be decided arbitrarily; nor can the state otherwise deny an appellant fair procedure. *Burkett v. Cunningham*, 826 F.2d 1208, 1221 (3rd Cir. 1987) (citing *Evitts,* 469 U.S. at 404).

Due process concerns are implicated when the state fails to assure a criminal defendant an adequate opportunity to present his claims and to obtain a final determination on the merits of the appeal. *Evitts,* 469 U.S. at 402, 405; *see also Burkett*, 826 F.2d at 1221; *Galloway v. Stephenson*, 510 F. Supp. 840, 842 (M.D.N.C. 1981). Equal protection concerns are implicated when the state treats a class of defendants differently for purposes of offering them a meaningful appeal. *Evitts,* 469 U.S. at 405.[3]

A defendant has the absolute right guaranteed by the Sixth Amendment to the effective assistance of counsel on his first appeal as of right. *Douglas*, 372

---

[3] *See also Halbert,* 545 U.S. at 610-11 ("'The equal protection concern relates to the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs,' while '[t]he due process concern homes in on the essential fairness of the state-ordered proceedings.'") (quoting *M.L.B. v. S.L.J.,* 519 U.S. 102, 120 (1996)).

U.S. at 356-57; *see also Evitts,* 469 U.S. at 395-97; *Ross v. Moffitt,* 417 U.S. 600 (1974); *Ward v. Wolfenbarger,* 323 F.Supp.2d 818, 828 (E.D. Mich. 2004);[4] *cf. Halbert,* 545 U.S. at 616-17. The Supreme Court has recognized that "[t]he need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to the appellate stage. Both stages of the prosecution, although perhaps involving unique legal skills, require careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over." *Ward,* 323 F.Supp.2d at 828 (quoting *Penson v. Ohio,* 488 U.S. 75, 85 (1988)). Because the person appealing his criminal conviction "must face an adversary proceeding that–like a trial–is governed by intricate rules that to a layperson would be hopelessly forbidding," *id.* at 829 (quoting *Evitts,* 469 U.S. at 396), "the services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate consideration on the merits," *Evitts,* 469 U.S. at 393-95. *See also Halbert,* 545 U.S. at 621.

It is well-settled that the Constitution is violated if a criminal defendant is denied an appeal "by reason of his lack of knowledge of his right and the failure of his counsel *or* the court to advise him of his right to appeal with the aid of counsel." *Goodwin v. Cardwell,* 432 F.2d 521, 522-23 (6th Cir. 1970) (emphasis added); *see also Henderson v. Cardwell,* 426 F.2d 150, 154 (6th Cir. 1970); *Hall v. Yanai,* 197 Fed.Appx. 459, 460 (6th Cir. Sept. 27, 2006) (not published in Federal Reporter). It is also well-settled that a "lawyer who disregards specific instructions from the defendant to file a notice of appeal" is constitutionally ineffective. *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000) (citing *Rodriquez v. United States,* 395 U.S. 327 (1969)).[5]

In this case, however, it is clear from the record that petitioner was advised

---

[4] In *Ward,* the district court granted in part a subsequent motion filed by petitioner for reconsideration to the extent that the original grant of a conditional writ of habeas corpus was vacated and petitioner was instead granted an unconditional writ of habeas corpus. *See Ward v. Wolfenbarger,* 340 F.Supp.2d 773 (E.D. Mich. 2004).

[5] *Cf. Peguero v. United States,* 526 U.S. 23, 28 (1999) (under *Rodriquez,* "when counsel fails to file a requested appeal, a defendant is entitled to . . .an appeal without showing that his appeal would likely have had merit"); *Waldron v. Jackson,* 348 F.Supp.2d 877, 889 (N.D. Ohio 2004) (and cases cited therein) ("Since *Evitts,* the Sixth Circuit has consistently held that a defendant, who sought to appeal his conviction, but whose counsel failed to properly perfect an appeal, was entitled to a delayed appeal."); *see also Hall,* 197 Fed.Appx. at 460.

7

when he entered his plea and at sentencing of his right to an appeal that had to be filed within thirty (30) days of sentencing, as well as of his right to court-appointed counsel on appeal free-of-cost, which he did not exercise. (*See* Doc. 7, Ex. 7 & Ex. 23, Tr. 6, 12, 20). Petitioner has suggested that because he speaks only "broken" English, the trial court and his attorney failed to ensure that he was adequately informed of his appeal rights by the court-appointed interpreter. However, there is no indication in the record that petitioner's interpreter failed to effectively communicate with petitioner or did not accurately translate all that was said to and by petitioner in the court proceedings. (*See id.*, Ex. 23). On the contrary, before accepting petitioner's guilty plea, the trial judge carefully questioned petitioner through the interpreter about his understanding of the terms of the plea agreement, including his appellate rights as explicitly recognized in the written plea entry. (*See id.*, Exs. 7, 23).

To the extent that petitioner contends he is entitled to relief because his trial counsel failed to either consult with him about his appeal options or file a timely appeal on his behalf, his allegations are insufficient to give rise to an actionable claim.

In *Roe*, the Supreme Court held that in cases where counsel consults with the defendant about an appeal, counsel "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Roe,* 528 U.S. at 478. The Court further held that in cases where counsel has not consulted with the defendant about an appeal, such failure to consult amounts to "professionally unreasonable" conduct only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 478, 480.

Petitioner has not demonstrated that his counsel's conduct was ineffective to the extent counsel consulted with petitioner about an appeal. Petitioner has never indicated that he expressly instructed his trial attorney to appeal his conviction as required under *Roe*. Indeed, although it is clear from the record that petitioner was informed of his right of appeal to be exercised within 30 days of sentencing, there is no evidence in the record even remotely suggesting that petitioner ever conveyed to his counsel or the trial court his desire to exercise that right. Therefore, petitioner is unable to demonstrate that his trial counsel provided ineffective

assistance by failing to file a timely appeal on his behalf.

In addition, petitioner has not shown that his counsel failed to consult him about an appeal when there is reason to think that a rational defendant would want to appeal, or that petitioner reasonably demonstrated his interest in appealing his conviction. In *Roe,* the Supreme Court stated that "[a]lthough not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Roe,* 528 U.S. at 480.

Here, petitioner chose to enter a guilty plea to the drug trafficking count in exchange for the imposition of an agreed-to five (5) year prison sentence and the dismissal of two other criminal charges and all specifications carrying their own additional penalties. Petitioner was expressly advised of his appeal rights by the trial court and in the written plea agreement, which he stated he had reviewed and discussed with his counsel and translator prior to entering his plea. Although petitioner was informed of his right of appeal, there is no indication in the record that he ever expressed an interest in pursuing an appeal.

Nor has petitioner shown why a rational defendant would want to appeal his conviction or agreed-to sentence by, for example, setting forth non-frivolous arguments he would have raised on appeal. *Contrast Rodriquez,* 395 U.S. at 330 (indigent *pro se* petitioner, whose education was "limited" and who lacked "facility in the English language," was not required to show some likelihood of success on the merits in order to prevail on his claim that he was deprived of his right to appeal based on his counsel's failure to perfect an appeal expressly requested by him). In the absence of any evidence indicating a rational defendant in petitioner's circumstances would have wanted to appeal his conviction or sentence, petitioner has not demonstrated (1) that his counsel acted unreasonably to the extent he may not have consulted with petitioner about his appeal "options," or (2) that he was "prejudiced" by such conduct to the extent no "reasonable probability [exists] that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed" his conviction or agreed-to sentence. *Cf. Roe,* 528 U.S. at 484-86; *United States v. Lovell,* 83 Fed.Appx. 754, 759-60 (6th Cir. Dec. 8, 2003) (not published in Federal Reporter), *cert. denied,* 541 U.S. 1035 (2004).

Finally, because petitioner never expressed an interest in appealing his

conviction or sentence to the trial court, petitioner is not entitled to relief based on his allegations that counsel nevertheless should have been appointed and documents provided to him for the purpose of prosecuting a timely appeal.

In *Swenson v. Bosler,* 386 U.S. 258, 260 (1967) (per curiam), the Supreme Court stated: "When a defendant whose indigency and a desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel."[6] Some courts within the Sixth Circuit have interpreted this statement in *Swenson* as requiring the defendant's knowing and intelligent waiver of his rights to an appeal and to counsel on appeal, which cannot be presumed from a "silent record." *See, e.g., Ward,* 323 F.Supp.2d at 829; *Duncan v. United States,* 842 F.Supp. 1016, 1017 (M.D. Tenn. 1993), *aff'd mem.,* 28 F.3d 1213 (6th Cir. 1994); *United States v. Aloi,* 773 F.Supp. 55, 63 (N.D. Ohio 1991), *vacated in part,* 9 F.3d 438 (6th Cir. 1993);[7] *cf. Boyd v. Cowan,* 519 F.2d 182, 184 (6th Cir. 1975) (holding "there was no knowing, intelligent, and intentional relinquishment . . . of either appellant's right to counsel at appeal or of his right to appeal" in the absence of evidence in the record that (1) petitioner was personally advised of his attorney's opinion about the futility of an appeal and agreed with such advice, or that (2) petitioner delegated to his sister the decision as

---

[6]*See also Turner v. North Carolina,* 412 F.2d 486, 488-89 (4th Cir. 1969); *Thorbus v. Beto*, 339 F. Supp. 501, 504-05 (W.D. Texas 1971); *Tucker v. Meadows,* 234 F. Supp. 882, 884-86 (M.D. Tenn. 1964); *cf. Rodriquez,* 395 U.S. at 331 (when retained counsel attempted to withdraw from federal criminal case and moved for *in forma pauperis* status, which should have placed the trial judge on notice that petitioner would be unrepresented on appeal, the court's failure to inquire into such circumstances effectively deprived petitioner of the right of appeal); *United States ex rel. Smith v. McMann,* 417 F.2d 648, 654-55 (2nd Cir. 1969) (indigent defendant must be advised of his appeal rights whether or not he indicates a desire to appeal), *cert. denied,* 397 U.S. 925 (1970).

[7]On appeal, the Sixth Circuit disagreed with the district court's ruling in *Aloi* to the extent the lower court found that a non-indigent defendant with retained counsel did not knowingly and intelligently waive his appellate rights. *Aloi,* 9 F.3d at 443-44. The Sixth Circuit reasoned that because the right to advice about one's appellate rights is based on "the equal protection principle established in *Griffin, Douglas,* and *Swenson* that prohibits discrimination on account of poverty," the "Ohio court was under no constitutional obligation to advise a *non-indigent* defendant, *represented by retained counsel,* of his right to appeal in forma pauperis." *Id.* at 444 (emphasis in original).

to whether or not to appeal); *Hill v. Jago,* 774 F.2d 1162 (table), No. 83-3448, 1985 WL 13680, at **2 (6th Cir. Sept. 30, 1985) (unpublished) (finding that petitioner voluntarily waived his right of appeal when he voluntarily dismissed his direct appeal "despite his awareness of the consequences").

However, these decisions ultimately turned on whether constitutional violations had occurred either because the defendant was neither aware nor informed of his appellate rights, or because counsel failed to perfect an appeal specifically requested by the defendant. *See Ward,* 323 F.Supp.2d at 829 (finding constitutional violation because petitioner was never advised of his right to appeal or his right to appointment of counsel on appeal); *Duncan,* 842 F.Supp. at 1023 (finding no constitutional violation because the evidence failed to support petitioner's contention that he had directed his attorney to file an appeal); *Aloi,* 773 F.Supp. at 62-63 (finding constitutional violation because petitioner was not advised, and was thus unaware, of his right to appeal or right to appointed counsel on appeal). As the Fifth Circuit has recognized, "[w]hile some circuits have spoken in terms of waiver when addressing the decision whether to appeal, no circuit has failed to find waiver when the petitioner actually knew of his appellate rights and no circuit has inquired into the mental condition of the petitioner at the time he was advised of his appellate rights." *Norris v. Wainwright,* 588 F.2d 130, 136-37 & n.3 (5th Cir.), *cert. denied,* 444 U.S. 846 (1979).

Although courts ordinarily require a voluntary and intelligent waiver of a known constitutional right, *see Johnson v. Zerbst,* 304 U.S. 458, 464 (1938), "[t]he right to appeal . . . is not a negative right to be used as a shield against government intrusion." *Childs v. Collins,* 995 F.2d 67, 69 (5th Cir.), *cert. denied,* 510 U.S. 1016 (1993); *see also White v. Johnson,* 180 F.3d 648, 654-55 (5th Cir. 1999). Instead, as discussed above, *see supra* p. 6, the right to appeal is a state-created right; it is not a component of the Sixth Amendment right to effective assistance of counsel or an independent right found in the Constitution, such as the right to be free from self-incrimination or the right to a trial by jury. *See Norris,* 588 F.2d at 137; *see also United States v. Sledd,* 575 F.Supp. 578, 582 (N.D. Ill. 1983) (citing *Rodriquez,* 395 U.S. at 329, and *United States v. Robinson,* 361 U.S. 220, 226 (1960)). "[I]t is a positive right that must be affirmatively exercised." *Childs,* 995 F.2d at 69; *see also White,* 180 F.3d at 654; *Norris,* 588 F.2d at 137 ("A defendant properly informed of his appellate rights may not 'let the matter rest' . . . and then claim that he did not waive his right to appeal.").

11

"Consequently, waiver of the right to appeal requires only that there be a knowledge of the right to appeal and a failure to make known the desire to exercise that right." *Childs,* 995 F.2d at 69 (and cases cited therein); *see also White,* 180 F.3d at 654 ("a defendant may be held to have waived the right to appeal upon a showing that the defendant was fully informed of his appellate rights and failed to make known his desire to exercise those rights"). In *Roe,* the Supreme Court implicitly endorsed the Fifth Circuit's position by expressly rejecting a *per se* rule effectively imposing the duty on counsel in all cases "either (1) to file a notice of appeal, or (2) to discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly." *Roe,* 528 U.S. at 478.

Therefore, petitioner is unable to prevail on any claim that counsel should have been appointed and documents provided for appeal purposes simply because he never expressed a knowing and intelligent waiver of his right to an appeal. In any event, it appears that petitioner in fact "waived" his appellate rights under the appropriate standard enunciated by the Fifth Circuit in *Childs* and *White*.[8]

In sum, the undersigned concludes that petitioner was not deprived of his constitutional right of appeal due to his trial counsel's ineffectiveness or any error on the part of the trial court. Therefore, the Ohio Court of Appeals' denial of a delayed appeal to petitioner also does not trigger constitutional concerns. Accordingly, petitioner is not entitled to habeas relief based on allegations contained in Grounds One through Three of the petition essentially claiming that petitioner's trial counsel, the trial court and the Ohio Court of Appeals deprived petitioner of his constitutional right of appeal.

### B. Petitioner Is Not Entitled To Relief On His Claims Challenging His Sentence, Which He Agreed To As A Term Of The Plea Agreement

In Ground One of the petition, petitioner alleges in part that his trial counsel was ineffective because he failed to object to the "more than minimum sentence" that was imposed on petitioner as a "first time offender." In Ground Three, petitioner further claims that he was denied his rights under the Fourteenth

---

[8]In *Hall,* 197 Fed.Appx. at 460-61, the Sixth Circuit implicitly endorsed this position when it affirmed the district court's judgment, which in part rested on the same analysis that was articulated by the magistrate judge in the "comprehensive report and recommendation" adopted by the district court.

Amendment's Equal Protection Clause because he was not sentenced to the minimum sentence for the underlying offense.

Petitioner is unable to prevail on these claims because the five-year sentence that was imposed was an express term of the plea agreement reached after "extensive negotiations" between the parties. (*See* Doc. 7, Ex. 7 & Ex. 23, Tr. 2-4). Moreover, to the extent that petitioner claims his plea was involuntary because he was "coerced" into agreeing to the five-year sentence, such contention is belied by the record.

At the plea hearing, petitioner's counsel explained on the record:

I told [petitioner] a few minutes ago what I told him yesterday. That if and when he accepts this arrangement, that he needs to understand that a guilty plea means just that.

Waives his right to a trial by jury, and it admits both the facts recited by the prosecution, and acknowledges that those facts constitute the offense in question.

*The good part about this in my professional judgment is that there are two counts being dismissed outright, that the plea to this count is in reduced form, minus the specification, and that the agreed sentence of five years, while a substantial penalty, nevertheless is only half what the maximum penalty would otherwise be available to the Court.*

(*Id.,* Ex. 23, Tr. 3-4) (emphasis added).

Before accepting petitioner's plea, the trial judge engaged in an extensive colloquy with petitioner through the interpreter to ensure that petitioner was competent to enter a plea, that it was petitioner's signature on the plea entry form, that petitioner had reviewed and discussed the form with his counsel and translator before coming to court, and that petitioner personally understood the terms of the plea agreement and the consequences of his plea. (*See id.,* Tr. 6-12). Moreover, the court expressly advised petitioner that the trafficking offense he was "pleading to . . . carries with it a sentence of 3 to 10 years. That's 3, 4, 5, 6, 7, 8, 9 or 10 years." (*Id.,* Tr. 9). When asked whether he understood that, petitioner responded through the interpreter that he did. (*Id.*).

13

Accordingly, upon examination of the totality of circumstances surrounding petitioner's plea, the undersigned concludes that petitioner's plea represented a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). By voluntarily agreeing to the imposition of a five-year prison sentence in exchange for the dismissal of other charges and specifications carrying additional penalties, petitioner is unable to now complain that he should have received the minimum sentence as a first time offender for the trafficking offense.

### C.  Petitioner's Claims Challenging The Supreme Court Of Ohio's Denial Of A Delayed Appeal, And The Trial Court's Alleged "Delay" In Ruling On His Post-Conviction Petition, Are Not Cognizable In This Proceeding

In Grounds Two and Three of the petition, petitioner alleges his Fourteenth Amendment rights to due process and equal protection were violated when the Supreme Court of Ohio denied his motion for delayed appeal and the Hamilton County Common Pleas Court failed to rule on his post-conviction petition "within 180 days" as required under Ohio R. Crim. P. 35(C). These allegations of error fail to give rise to a cognizable constitutional claim subject to review in this federal habeas proceeding.

A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Petitioner's claims, which stem from alleged errors on second-tier delayed discretionary review by the Ohio Supreme Court and by the trial court in a state collateral review proceeding, do not trigger concerns about a possible violation of petitioner's federal constitutional rights.

As discussed above, *see supra* p. 6, it is well-settled that an appellant challenging his state criminal conviction is entitled to federal due process protection, including the right to effective assistance of counsel, when the state provides for an appeal as of right or first-tier review by an intermediate court of appeals sitting in its error-correction capacity. *See, e.g., Halbert,* 545 U.S. at 616-

23; *Evitts,* 469 U.S. at 392-93. These constitutional protections do not extend beyond the appellant's appeal as of right, however, to subsequent state discretionary appeals or collateral review. *See Coleman v. Thompson,* 501 U.S. 722, 755-57 (1991) (relying on *Ross v. Moffitt,* 417 U.S. 600, 616 (1974), and *Pennsylvania v. Finley,* 481 U.S. 551, 556 (1987)).

In Ohio, a criminal defendant's first appeal as of right is his direct appeal to the Ohio Court of Appeals, where he has the constitutional right to effective assistance of counsel in prosecuting that appeal. *See State v. Vaughn,* 241 N.E.2d 288 (Ohio Ct. App. 1968). In contrast, the alleged errors at issue here occurred (1) during petitioner's state post-conviction proceedings, and (2) when petitioner sought to obtain the Supreme Court of Ohio's delayed discretionary review of the Ohio Court of Appeals' decision denying his motion for leave to file a delayed appeal.[9]

Because constitutional concerns were not triggered by the Supreme Court of Ohio's denial of a delayed discretionary appeal or by any error occurring in the state post-conviction proceedings, petitioner's allegations do not give rise to a cognizable ground for relief in this federal habeas corpus proceeding. *Cf. Wainwright v. Torna,* 455 U.S. 586, 587-88 & n.4 (1982) (per curiam) (holding that petitioner was not denied due process by the state supreme court's dismissal of an untimely-filed application for discretionary review or by retained appellate counsel's failure to file a timely application for discretionary review with that court, because petitioner neither had an absolute right to appeal his conviction to the state supreme court nor a constitutionally-protected right to effective assistance of counsel in seeking discretionary review by the state supreme court); *Ross,* 417

---

[9]In the state supreme court, there are several types of appeals which include "appeals of right" in capital cases and in cases that originated in the court of appeals; "claimed appeals of right" in cases where the appellant asserts the existence of a "substantial constitutional question;" and "discretionary appeals" in cases involving a felony or a question of public or great general interest. *See* Rule II, §1(A), Rules of Practice of the Supreme Court of Ohio. This non-capital case, which originated in the trial court, does not involve an appeal of right to the Supreme Court of Ohio. Therefore, if petitioner had timely appealed the Court of Appeals' denial of his motion for delayed appeal, he could have invoked the state supreme court's appellate jurisdiction only as a "claimed appeal of right" or "discretionary appeal." The Rules of Practice of the Supreme Court of Ohio clearly provide that in such cases, the court has the discretion to determine whether or not to allow the appeal. *See* Rule II, §§ 1(A)(2) and 1(A)(3), and Rule III, § 6, Rules of Practice of the Supreme Court of Ohio.

U.S. at 610-19 (holding that the state was not constitutionally required to provide a criminal defendant with counsel on discretionary appeal to the state supreme court); *see also Mapson v. Russell*, 869 F.2d 1491 (table), No. 88-3959, 1989 WL 16211, at **1 (6th Cir. Feb. 23, 1989) (unpublished) (affirming denial of petition alleging ineffective assistance of post-conviction appellate counsel as "not cognizable in federal habeas corpus").

Moreover, with respect to petitioner's claim regarding the trial court's untimely review of his post-conviction petition, the writ of habeas corpus is not the proper means by which prisoners can challenge errors or deficiencies in state post-conviction proceedings which address collateral matters and not the underlying conviction giving rise to the prisoner's incarceration. *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir. 1986). Petitioner's allegation of error is such a "collateral matter," because it does not affect or relate to petitioner's underlying conviction and sentence.

Accordingly, petitioner is not entitled to habeas relief based on the non-cognizable claims alleged in Grounds Two and Three of the petition challenging the Supreme Court of Ohio's denial of a delayed discretionary appeal and the trial court's purported failure to rule on his post-conviction petition in a timely manner.

### D. Petitioner Has Waived His Remaining Claims By Entering A Valid Guilty Plea And By Failing To Raise Them To The State Courts

It appears from the petition that petitioner's remaining claims involve the following allegations of error: (1) petitioner was denied the right to consult with consulate counsel who could speak with petitioner in Spanish, which is petitioner's native language; and (2) petitioner was "coerced" to sign an "English-printed" waiver-of-counsel form at the Hamilton County Jail on his arrest, which resulted in the denial of counsel during his custodial interrogation. (*See* Doc. 1, pp. 5-6 & attachment, Grounds One-Three).

By pleading guilty, a defendant waives all non-jurisdictional defects in the proceedings. *United States v. Pickett,* 941 F.2d 411, 416 (6th Cir. 1991). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also*

*McMann v. Richardson,* 397 U.S. 759, 768-69, 771 (1970); *Campbell v. Marshall,* 769 F.2d 314, 318-19 (6th Cir. 1985), *cert. denied,* 475 U.S. 1048 (1986). Rather, he may only seek to attack the validity of his guilty plea by showing that under the circumstances, his guilty plea was not intelligently and voluntarily entered. *Id.*; *see also Campbell,* 769 F.2d at 315.

Petitioner's remaining allegations of error relate to purported deprivations of constitutional rights occurring before petitioner entered his guilty plea. As discussed *infra* pp. 13-14, the record does not support any claim that petitioner's plea was anything other than a "voluntary and intelligent choice among the alternative courses of action open to" him. *See Sparks,* 852 F.2d at 885 (quoting *Alford,* 400 U.S. at 31); *see also* Doc. 7, Ex. 23. Because petitioner entered his guilty plea knowingly, voluntarily and intelligently, with sufficient awareness of the relevant circumstances and likely consequences, *see, e.g., Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir.), *cert. denied,* 512 U.S. 1222 (1994), he is unable to challenge his conviction based on such claims.

In any event, petitioner has waived his remaining claims for relief because he failed to present them to the state courts for their consideration in his motions for delayed appeal or his petition for state post-conviction relief. (*See* Doc. 7, Exs. 10, 14, 18).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his

claims in the state courts, his claims for habeas corpus relief are subject to dismissal with prejudice on the ground that they are waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). The procedurally-defaulted claims are deemed "waived" unless petitioner can demonstrate cause for his default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

Here, petitioner has neither shown cause for his default in failing to raise his remaining claims in the state courts, nor demonstrated a "fundamental miscarriage of justice" will occur if such procedurally-defaulted claims are not considered on the merits by this Court.

Accordingly, in sum, petitioner is not entitled to habeas relief based on his remaining claims, which he waived when he knowingly, voluntarily, and intelligently pleaded guilty to the drug trafficking charge as well as when he failed to fairly present the claims to the state courts in his motions for delayed appeal or in his petition for state post-conviction relief.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to claims for relief which this Court has concluded are barred from review on procedural waiver grounds, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural rulings.[10]

---

[10]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his "waived" claims for relief. *See Slack,* 529 U.S. at 484.

A certificate also should not issue with respect to claims for relief that were addressed on the merits herein, because petitioner has not made a substantial showing that he has stated a "viable claim of the denial of a constitutional right" that is "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  4/9/2007                                s/Timothy S. Hogan
       cbc                                     Timothy S. Hogan
                                               United States Magistrate Judge


J:\BRYANCC\2007 habeas orders\05-812denypet.rtapp-gp.agreedsent.waiv.non-cog.wpd

# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Pio German Espinal,
    Petitioner

    vs                                                    Case No. 1:05cv812
                                                              (Dlott, J.; Hogan, M.J.)

Jeffrey Wolfe,
    Respondent

## NOTICE

        Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254.  Any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s)   Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).